# N. Y. SUPERIOR COURT.

## JOHN O'MAHONEY agt. AUGUST BELMONT and another.

*Motion to set aside precept for contempt, for irregularity.*

Where on the settlement of the accounts of a receiver, an order of the court is issued directing the amount found to be due from him to be paid over on demand to the proper party, together with a specified sum in addition as referee's fees; and where a personal demand has been made of the receiver, under the order of the court, for payment of these sums, which has been refused, it is no objection to the validity of the order of the court on issuing the precept for commitment, or to the process, that it was issued for a less amount (by deducting the referee's fees) than was demanded.

*Special Term, May,* 1874.

MOTION, made by a receiver in the action, to set aside a precept issued against him for non-payment on demand of the moneys directed to be paid by him by an order of the court of March 6, 1873, upon the settlement of his account as receiver. (2 *R. S., vol.* 2, 535, § 4.) The order directed the payment, by the receiver, of the sum of $24,627.31, together with the sum of $520, referee's fees, on the settlement of the receiver's accounts, paid by one of the defendants.

*James Henderson,* attorney, and

*Samuel Jones,* of counsel, for T. J. Barr.

The statute under which the precept was issued is in the nature of a *penal* statute, and should be construed strictly. (2 *R. S., vol.* 2, 535, § 4.)

The several demands upon Mr. Barr included the $520, referee's fees, which the court, in granting the order for the precept, struck out; thus holding that a precept should not issue under section 4 of the statute for said fees, for the reason that they were in the nature of costs against said Barr. This, under the law of 1847, chapter 390, was undoubtedly a correct ruling. The demands, however, not following the language of the order of March 6, 1873, but being for a sum in gross, and for a greater amount than that for which defendant Lucke was entitled to obtain a precept under said section, is insufficient.

The demand provided for by said section 4, is analogous to that required in summary proceedings to dispossess for non-payment of rent; and as to requisites of such demand see *Wolcott* agt. *Schenck* (16 *How.*, 451); *Van Rensselaer* agt. *Jewett* (2 *Coms.*, 147).

The mere service of the order of March 6, 1873, directing payment of money, is not a sufficient demand (*Gray* agt. *Crook*, 24 *How. Pr. R.*, 432).

In any event, the demand should have been made *personally*, by one of the parties to whom payment was directed to be made; and this not having been done, the proceedings are irregular (*Pantur* agt. *Zebley*, 19 *How. Pr. R.*, 394).

It is submitted, that the motion to vacate the precept and order allowing the same should be granted.

*Barlow, Larocque & McFarland*, for defendants.

*First.* There is no analogy between the provisions of the statute under which the commitment in question was issued and the law regulating the rights of landlords. No better illustration of this could be required than that furnished by the case of *Van Rensselaer* agt. *Jewett*, cited by the counsel for Mr. Barr. In that case the court held that " where the remedy by re-entry for the non-payment of rent is reserved by the lease, and the landlord pursues it under the provisions of

O'Mahoney agt. Belmont.

the common law, it is indispensable to his right to re-enter that he should, either in person or by his agent or attorney, duly authorized, previously, on the *very day* upon which the rent becomes due and payable, at a convenient time before sunset, in which the money may be counted before night, make an actual demand of the exact amount of the rent due, at the particular place at which the rent may be made payable by the terms of the lease; or if there be no place stipulated in the lease, then, at the most notorious place upon the land demised, which, if there be a dwelling-house, is the front door thereof."

A court of equity would find its hands rather too closely tied to enable it to be of much service, if obedience to its orders could only be enforced after such a close and technical method of procedure toward the person whose obedience was sought to be compelled.

The case of *Wolcott* agt. *Schenck*, cited by the counsel for Mr. Barr, was disposed of upon the point that the only demand of rent upon which the proceeding was based was, as appeared from the landlord's affidavit, a demand, not made of the lessee, personally, nor upon the demised premises, but of an alleged agent of the lessee — the affidavit disclosing neither the name of the agent nor the character of his agency.

The case of *Gray* agt. *Cook* (24 *Barb.*), was disposed of by Mr. Chief Justice Bosworth on the ground that the decision there in question, being in its nature a final judgment which could be enforced by execution, the fourth section of the article relating to proceedings as for contempt in aid of civil remedies had no application.

In the present case, not only was the original order served, but also a copy of the order of the general term affirming it; and demands were made for compliance, both before the appeal and after the affirmance of the order upon appeal.

Mr. Barr having appealed from the order, is presumed to have been fully advised as to all the terms thereof. The

demands were made in precise conformity with the order. All that it was necessary to do to set the machinery in motion to punish his disobedience of the order, was to give him notice of its contents and to request his compliance; this being done, if he omitted to obey it, he did so at his own peril. He could at any time have tendered or offered compliance with so much or such parts thereof as he thought fit.

*Second.* The suggestion that one of the parties named in the order should have in person called upon Mr. Barr and made the demand, certainly needs no reply. The maxim, "*fui facit per alium facit per se*," governs this case. The evidence produced before the court shows that the person making the demand was fully authorized, and that the proper evidence of his authority was presented to, and left with Mr. Barr at the time of the demand.

The case of *Tanton* agt. *Zebley*, cited by Mr. Barr's counsel, was a case where an order had been made for the delivery of property to a receiver. An attachment for contempt was refused, because the evidence showed that the only demand made upon the defendant was one by a referee, which called upon the defendant to deliver the property to the plaintiff's attorney or to the referee. The court held that the defendant was under no obligation under the order in that case to deliver the property to anybody but the receiver; and there was no evidence to show any authority on the part of the referee or the plaintiff's attorney to represent the receiver in that matter.

*Third.* It is not true that there was any decision of the court as to the propriety of Mr. Barr's commitment for non-payment of the referee's fees, embraced in the original order; that amount was omitted from the order for commitment, as the court will recollect, voluntarily, by the attorneys for the defendant Lucke, to avoid any possible question; although it was claimed and is insisted that said amount cannot properly be considered as in any sense interlocutory costs, and that

O'Mahoney agt. Belmont.

Mr. Barr might have been committed with perfect propriety in consequence of his refusal to pay that amount.

*Fourth.* An attachment to appear and answer, is not the proper remedy for a contempt, which consists in not paying a sum of money directed to be paid. In such case the precept issues to commit directly (2 *R. S.*, 535, §§ 4, 5; 2 *Barb. Ch.*, 271; 1 *Hoffm.*, 429).

The Code does not affect the practice in this respect (*People ex rel. Pease* agt. *King*, 9 *How. Pr.*, 97; *People* agt. *Morris*, 1 *Hill, a. p.* 169).

A party committed for contempt will not be discharged for a mere irregularity in the proceedings, in the course of which his committal was made, if the officer had jurisdiction (*Meyers* agt. *Janes*, 3 *Abb. Pr.*, 301).

VAN VORST, *J.* — Two demands have been made upon the late receiver for the payment of the moneys ordered to be paid by the order of this court, made on the 6th day of March, 1873. The demands were made on him personally.

The first demand was made on the 14th day of March, 1873, and the latter on the 16th day of April, 1874, after the order had been affirmed by the general term, on appeal. A copy of the order was served on him, showing the separate amounts ordered to be paid.

Both demands were refused. On the 14th March, 1873, the amount demanded was the sum of $25,882.30, being the amounts ordered to be paid, with interest to the date of that demand, stated in one sum. On the 16th April, 1874, the sum demanded was $27,808.76, being the amount of the sums directed to be paid, with the interest added to that date.

Upon the return of the order to show cause why the order directing the issuing of a precept, and the precept itself, should not be set aside, it was objected on the part of the late receiver, that the demand was made for a sum greater than that ordered to be collected by the precept. It is not shown that more was demanded of the late receiver than was ordered

O'Mahoney agt. Belmont.

to be paid by him by the order of the 6th March, 1873, and the amount stated in the papers upon which the order for the issuing of the precept was made, and which appears was demanded, must be deemed to be the correct amount so ordered to be paid, with interest added.

That the order directed the issuing of a precept for a less amount than was demanded, is no reason why it should be set aside if, in fact, no more was demanded than the late receiver was called upon to pay by the direction of the court.

The amount for which the precept was ordered was the sum of $24,627.31, with interest from the 7th day of October, 1872; which was one of the sums directed to be paid by the order of 6th March, 1873, and was included in the demand, the interest being added. The sum of $520, the referee's fees, directed to be paid by the late receiver by the same order, and which, with interest, had been included, and that properly, in both demands, as the defendant was entitled to demand its payment, was, however, omitted from the order directing the precept, and from the precept itself. This cannot affect the validity of the order or the precept, as both amounts were money ordered to be paid by the court.

It is unnecessary to decide whether a precept could have issued to enforce the payment of the sum of $520, as such sum is not included in the order directing its issuance. But that its payment was properly demandable, and that too at the time the other amount was demanded, can scarcely be questioned.

But I am inclined to think that there is no difference in the character of the sums which make up the amount demanded, so far as the enforcement of their payment is concerned, and that the separate sum of $520 ordered to be paid is not strictly within the terms "costs," mentioned in the act of November 22, 1847 (*Laws of* 1847, *chap.* 390, §§ 2 *and* 3; *Newton* agt. *Sweet*, 4 *How. Pr. R.*, 134, *opinion of* HARRIS, *J.; Livingston* agt. *Fitzgerald*, 2 *Barb.*, 396). In no sense

O'Mahoney agt. Belmont.

is the amount " interlocutory costs." The amount is ordered to be paid in a special proceeding, after judgment; although entitled in the action, to settle and enforce the payment of the moneys in the hands of the late receiver, such moneys having been received by him as an officer of the court, and under its order.

This sum, it appears, had been paid by the defendant Lucke, or his attorneys, for the fees of the referee, on the accounting of the receiver, of the moneys in his hands. The court, in its order, directed that the late receiver should forthwith pay this sum, together with the principal sum above mentioned, to the defendant or his attorneys, for moneys so paid by them, on Mr. Barr's accounting.

No costs, as such, were awarded by the order of the 6th March, 1873.

The motion should be denied.

NOTE — The receiver after the precept was issued and served, was brought up before one of the justices of the supreme court upon writ of *habeas corpus* to inquire into the cause of his detention, but after a hearing the writ of *habeas corpus* was discharged, and the party remanded.

As to proceedings for contempt in not paying money ordered to be paid, see " *Crary New York Practice,*" " *Special Proceedings,*" *vol.* 1, 171.